JOHN H. MAGOON, ALFRED K. MAGOON, EATON H. MAGOON AND MARMION M. MAGOON, TRUSTEES UNDER THAT DEED OF TRUST MADE BY EMMELINE M. MAGOON, *v.* HONG YEE CHUCK AND ALBERT E. HARRIS.

No. 1952.

FILED JANUARY 2, 1931.          DECIDED MARCH 18, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

*Per Curiam.* The defendants present a motion for a rehearing. The first ground is "that the court erred in holding that the question of joint disseizors and the doctrine of the survivorship or tenancy in common was involved in this case." Admitting that in opening their case to the jury the defendants stated "that Kala, Kaui and Rose became joint disseizors at the death of their parents and that Rose became entitled to the land as the survivor of joint disseizors," it is contended that "the defendants specifically abandoned this ground of defense." In this connection it is said that "at one stage of the proceeding" (Tr. p. 362) "plaintiffs' attorney began to argue the ques-

tion of joint possession and was immediately stopped upon objection of defendants' counsel to the effect that the question was not involved and the jury would be instructed as to the questions before them." What is shown at the page referred to is that the court said, in answer to the objection of defendants' counsel, that "the jury will be guided as to the law in instructions that will be given later." The instructions that were given later involved the question of joint possession and survivorship, as stated in our former opinion herein (31 Haw. 661). Reference is made in the brief, which is incorporated under the title of "Petition for Rehearing," to an alleged understanding arrived at with the circuit judge when the proposed instructions to the jury were being considered, that "the question of joint possession was eliminated." The record before us does not show what happened on the occasion referred to. Leave is requested "to obtain from the trial judge and file herein a certification as to what took place on the settlement of instructions." Such a showing could not affect the result when, as already held by us, and, we still think, properly held, the instructions as finally given involved the issue of joint possession and of the nature of the resulting estate.

The second ground of the petition is that this court, in holding that plaintiffs' requested instruction number 13 should have been given, "obviously overlooked the fact that it was 'refused as covered.'" Plaintiffs' instruction number 13 was clearly endorsed by the circuit judge, in the record before us, "refused as covered." This fact was not overlooked, but the endorsement, it need hardly be said, was not conclusive or binding on this court. We held that, in spite of other instructions given, number 13 should have been given. We are not impressed by the re-argument to the contrary.

The third ground is that "the court erred in holding that defendants' instructions Nos. 6 and 7 should not have

been given," and the fourth is that "the court erred in holding that a correct instruction to the jury would have been in effect" in certain language set forth in our former opinion. The main contention under these two assignments is that the court overlooked the fact that adverse possession in order to ripen into title must be exclusive. Without reciting the evidence at length (the former opinion contains a sufficient statement of it) it may be well to recall that there was ample evidence tending to show that Kala and Kaui, under whom the plaintiffs claim, held adverse possession, with all of its essential elements, for more than the statutory period. One Rose Hao lived on the land for many years, more than the statutory period. There was ample evidence which would have justified the jury in finding that her possession was permissive,—under Kala and Kaui. There was some evidence, however, more than a mere scintilla, that Rose was not occupying under Kala and Kaui, but was occupying in hostility to them. For example, Rose testified, "I believed that that place belonged to me" and "I lived there through stubbornness,"—although she also gave other testimony directly to the contrary, admitting specifically that it was not until after Kaui's death (1921) that she claimed the land. There was not the slightest evidence that Rose occupied one portion of the land and that Kala and Kaui occupied another portion. There was not the slightest evidence that Rose at any time excluded Kala and Kaui from any particular portion (less than the whole) of the land involved in this action. In the petition for rehearing it is said that "clearly, Rose's testimony shows that she never· claimed title, though it is equally clear that she never lived under Kala or Kaui or recognized any title in them" and the statement is repeated in various forms. It is true that adverse possession in order to result in the acquisition of the title by the possessor must be exclusive;

799

but this expression must not be taken too literally. It must be exclusive of the true owner,—in this instance Koloalu, the patentee, and her heirs and assigns. It must be exclusive of all others claiming the title or claiming an adverse possession in themselves. It is not exclusive, for example, of agents and servants of the adverse possessors. It is not exclusive of their relatives and friends making friendly visits. It need not be exclusive, even, of mere trespassers who are making no claim of title or of adverse possession. Upon the evidence in this case, Rose was either living upon the land under and by permission of Kala and Kaui or she was endeavoring to hold the land in hostility to them, claiming the title for herself. Present petitioners say that "she never claimed title." If she did not, she was living there by permission of Kala and Kaui. No intermediate position is possible upon the evidence or under the law. We did not overlook the necessity of the ingredient of exclusiveness, properly understood, in an alleged adverse holding.

The petition is denied, under the rule, without argument.